**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOSEPH VIDAL,

                     Plaintiff,

    v.                                                 9:19-CV-0429
                                                            (GLS/DJS)

ANTHONY J. ANNUCCI, *et al.*,

                     Defendants.

---

**APPEARANCES:**                                **OF COUNSEL:**

JOSEPH VIDAL
Plaintiff, *pro se*
94-A-5584
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

HON. LETITIA JAMES                     MATTHEW GALLAGHER, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff is an inmate in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS") and commenced this action

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his federal constitutional rights. *See generally* Dkt. No. 10, Am. Compl. The District Court reviewed the Amended Complaint under 28 U.S.C. §§ 1915 & 1915A and dismissed certain claims and Defendants. Dkt. No. 13. Following that review, two claims remain - an Eighth Amendment conditions of confinement claim related to the temperature in Plaintiff's housing unit and a Fourteenth Amendment due process claim related to prison disciplinary proceedings. *Id.* at p. 23. Defendants now move for summary judgment under FED. R. CIV. P. 56. Dkt. No. 60. Plaintiff opposes the Motion. Dkt. No. 68. Defendants have replied in further support of the Motion. Dkt. No. 72.

For the reasons set forth below, the Court recommends that the Motion be granted.

## I. FACTUAL BACKGROUND

On January 14, 2016, while housed at Great Meadow Correctional Facility, Plaintiff was issued an inmate misbehavior report. Dkt. No. 60-21, Defs.' Rule 56.1 St., ¶ 3; Dkt. No. 68, Pl.'s Rule 56.1 St., ¶ 3.[2] After being issued the misbehavior report, Plaintiff was confined to the Special Housing Unit at Great Meadow. Defs.' Rule 56.1 St., ¶ 4; Pl.'s Rule 56.1 St., ¶ 4. A Tier III disciplinary hearing was held with respect to the January 14th misbehavior report at which Defendant Corbett presided. Defs.' Rule 56.1 St., ¶¶ 5-6; Pl.'s Rule 56.1 St., ¶¶ 5-6. At the conclusion of the hearing, Plaintiff

---

[2] Plaintiff's response to Defendants' Motion for Summary Judgment contains two documents. His responsive Rule 56.1 Statement can be found at pages 2-8 and is cited herein as Pl.'s Rule 56.1 St. He also offers a declaration found at pages 9-26 of his response which will be cited here as Pl.'s Decl.

2

was found guilty of the charges set forth in the misbehavior report. Defs.' Rule 56.1 St., ¶ 8; Pl.'s Rule 56.1 St., ¶ 8. That guilty determination was reversed upon Plaintiff's administrative appeal and a new hearing was ordered. Defs.' Rule 56.1 St., ¶ 10; Pl.'s Rule 56.1 St., ¶ 10. Plaintiff alleges that his due process rights were violated during the course of the hearing conducted by Defendant Corbett and that it also violated his rights to order a new hearing. Am. Compl. at ¶¶ 149-152. Plaintiff was subsequently transferred to Upstate Correctional Facility where the designated rehearing took place. Following that hearing, Plaintiff was again found guilty of the charges in the January 14th misbehavior report. Defs.' Rule 56.1 St., ¶¶ 11-14; Pl.'s Rule 56.1 St., ¶¶ 11-12.[3] Plaintiff's appeal of that determination was denied. Doc. No. 60-7 at p. 6. Plaintiff filed an Article 78 proceeding challenging that determination, and matters related to the initial hearing, in New York State court. That petition was denied, though the parties dispute the extent to which both hearings were fully litigated in that state court proceeding. *See* Defs.' Rule 56.1 St., ¶¶ 21-23; Pl.'s Rule 56.1 St., ¶¶ 21-23; Pl.'s Decl. at ¶¶ 35-40.

In February 2016, while housed in the SHU at Great Meadow, Plaintiff filed a grievance alleging insufficient heat. Defs.' Rule 56.1 St., ¶ 24; Pl.'s Rule 56.1 St., ¶ 24. In this action, Plaintiff alleges that the temperature was below zero in his housing unit. Am. Compl. at ¶¶ 89. Defendants maintain that Plaintiff's grievance was investigated

---

[3] Plaintiff's response to the Rule 56.1 Statement does not address the particular facts of the rehearing based on his view that it is not relevant to the questions presented in this case. Pl.'s Rule 56.1 St. at ¶ 12.

and that the heat in SHU was determined to be working properly. Dkt. No. 60-15, Eastman Decl., Ex. B; Dkt. No. 60-18, Campbell Decl., ¶¶ 9-10.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier

of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). In considering a summary judgment motion, the Court's role "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

#### A. Defendant Annucci

Defendant Annucci, the Acting Commissioner of DOCCS, is named as a Defendant with respect to both Plaintiff's Eighth Amendment and Fourteenth Amendment claims. *See* Am. Compl. at ¶ 159. He seeks summary judgment based, in

part, on a lack of personal involvement in the alleged constitutional violations. Defs.' Mem. of Law at pp. 4 & 7.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A supervisory official "may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Despite this rule, the Second Circuit for some time held that a supervisory official could be held liable under circumstances related to that supervisory role that did not involve their direct action. *See Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). *Colon* set forth five theories of liability that could apply to supervisory officials. *Id.* at 873. The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), however, "engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*." *Reynolds v. Barrett*, 685 F.3d 193, 206 n. 14 (2d Cir. 2012). The conflict remained unresolved until the Second Circuit's decision in *Tangreti v. Bachmann* which concluded that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676).

*Tangreti* requires that Plaintiff allege and establish that Annucci violated his rights "by [his] own conduct, not by reason of [his] supervision of others who committed the violation." 983 F.3d at 619. With respect to the Eighth Amendment, there is no allegation that Annucci, DOCCS' Acting Commissioner, had any knowledge regarding the alleged cell conditions in SHU and he is clearly sued here based solely on his supervisory capacity, which is no basis for relief. *Tripathy v. Schneider*, 2021 WL 4504461, at *3 (W.D.N.Y. Oct. 1, 2021) (Annucci not personally involved in conditions of confinement claim). As to the Fourteenth Amendment claim, Plaintiff testified at his deposition that Annucci was not personally involved in his January 2016 disciplinary hearing. Dkt. No. 60-3, Pl.'s Dep. at p. 37. Summary judgment as to that claim, therefore, is also appropriate.

### B. Eighth Amendment Claim

While the Eighth Amendment "does not mandate comfortable prisons," prisoners may not be denied "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 & 349 (1981). Thus, in order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991) (citation omitted); *see also Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir.1996).

In *Phelps v. Kapnolas*, the Second Circuit set out in detail the requirements that a plaintiff must prove in order to make out a claim that the conditions of his confinement violated the Eighth Amendment:

> Under the Eighth Amendment, States must not deprive prisoners of their basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety. Nor may prison officials expose prisoners to conditions that pose an unreasonable risk of serious damage to [their] future health. Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency.
>
> Concerning the subjective requirement, the Supreme Court has explained that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

308 F.3d 180, 185-86 (internal quotations and citations omitted).

The Second Circuit has recognized "that deliberate exposure of inmates by prison authorities to bitter cold while in solitary confinement would be evidence of cruel and unusual punishment." *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988). While Defendants are correct that some courts have found that exposure for a short period of time is insufficient to give rise to an Eighth Amendment violation, *see* Defs.' Mem. of Law at p. 3 (citing cases), "the Second Circuit recently confirmed that there is no 'bright-line durational . . . threshold' that a deprivation must meet." *Collins v. Fischer*, 2018 WL 1626528, at *7 (S.D.N.Y. Mar. 30, 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17,

32 (2d Cir. 2017)).[4]  Given the allegation that "between February 11 through February 15, 2016, the temperature was below zero degrees due to the inadequate heat resulting in freezing cold temperature in the cell block," Am. Compl. at ¶ 89, the Court presumes, solely for purposes of Defendants' Motion, that Plaintiff may be able to establish the objective element of his claim.[5]

Deliberate indifference, however, requires a plaintiff to establish that each defendant knew or and disregarded the risk posed to his wellbeing.  In this context "it requires a showing that the prison official 'kn[e]w of, and disregard[ed], an excessive risk to inmate health or safety' from the challenged condition of confinement." *Edwards v. Quiros*, 986 F.3d 187, 192 (2d Cir. 2021) (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

Other than Plaintiff's statements about the temperature in SHU, the record contains no objective evidence supporting Plaintiff's claims of freezing temperatures. There is no evidence that any of the Defendants were aware of alleged temperature problems in SHU, other than through Plaintiff's filing of a grievance.  In fact, each Defendant from Great Meadow specifically disclaims being aware of such a problem. Eastman Decl. at ¶¶ 15-17; Dkt. No. 60-16, Miller Decl., ¶¶ 14-16.  Plaintiff's grievance

---

[4] Although *Darnell* technically involved a Fourteenth Amendment conditions of confinement claim, it equated the objective component of such a claim with that of an Eighth Amendment claim. *Darnell v. Pineiro*, 849 F.3d at 30.

[5] This relates solely to Plaintiff's claim regarding the actual temperature in his cell.  To the extent the Amended Complaint could be construed to assert a stand-alone claim regarding DOCCS' policy of providing only one blanket, that claim does not pose a deprivation that could considered sufficiently serious for Eighth Amendment purposes. *Davidson v. Conway*, 318 F. Supp. 2d 60, 63 (W.D.N.Y. 2004) (citing cases).

was investigated. Facility maintenance staff reported that "the heat in SHU is in full working order, and the temperature is within acceptable levels." Eastman Decl., Ex. B at p. 7. The record establishes that there were no work orders for problems with the heating system at Great Meadow during the time in question. Campbell Decl. at ¶¶ 9-10.

That Plaintiff's grievance was investigated and determined to be without merit establishes that no known risk of harm was disregarded by Defendants, as Plaintiff would need to show to establish his Eighth Amendment claims. "An investigation of this kind demonstrates that prison officials were not deliberately indifferent to the plaintiff's claims." *Amaker v. Coombe*, 2002 WL 523388, at *14 (S.D.N.Y. Mar. 29, 2002); *see also Reyes v. Wenderlich*, 779 Fed. Appx. 55, 56 (2d Cir. 2019) (no deliberate indifference when defendants "referred prisoner complaints about the cold to the appropriate personnel" who investigated and found no problem with heating); *Smolen v. Kielisek*, 2006 WL 2335168, at *6 (W.D.N.Y. Aug. 10, 2006) (no deliberate indifference in light of investigation into inmate's grievance); *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) ("plaintiff's claims . . . are also unsupported by any evidence of deliberate indifference" when investigation established that plaintiff's complaint lacked merit).

Given the record which establishes without contradiction that Plaintiff's complaints of cold temperature were investigated and there was no evidence of any issues with the heating in the SHU, the Court recommends granting the Motion for

Summary Judgment based on the lack of any evidence of deliberate indifference on the part of Defendants.

### C. Due Process Claim

Defendants seek summary judgment with respect to the due process claim primarily on the ground that it is barred by the doctrines of res judicata and/or collateral estoppel because Plaintiff brought an unsuccessful state court challenge to the disciplinary proceedings. Defs.' Mem. of Law at pp. 4-7. They also argue that the reversal of the first disciplinary hearing, followed by the guilty determination at subsequent hearing renders claims as to the first hearing moot. *Id.* at p. 7 n. 2. The Court recommends granting summary judgment, but only as to the second ground raised.

The Court does not believe res judicata or collateral estoppel is a basis for summary judgment here. Setting aside the fact that the Second Circuit has questioned the appropriateness of the doctrines in the context of a prison disciplinary hearing, *Giakoumelos v. Coughlin*, 88 F.3d 56, 60 (2d Cir. 1996), Defendants have not shown the requirements for invocation of the doctrine in any event. In this context, "[t]here are two requirements for the application of collateral estoppel to an issue: '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" *Barnes v. Harling*, 368 F. Supp. 3d 573, 602 (W.D.N.Y. 2019) (quoting *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007)). The decision in the Article 78 proceeding dismissed all claims regarding Plaintiff's initial disciplinary

11

hearing as moot in light of the reversal and subsequent rehearing. Dkt. No. 60-11, Knapp Decl., Ex. I at p. 2. As a result, no issues regarding the alleged violation of Plaintiff's rights at that first hearing were actually decided by the state court. *Ortiz v. Prack*, 2016 WL 11266739, at *7 (N.D.N.Y. Sept. 22, 2016), *report and recommendation adopted*, 2017 WL 1048085 (N.D.N.Y. Mar. 20, 2017) ("No substantive issues were 'litigated' at all in the Article 78 proceeding because the case was dismissed as moot."). As a result, the Article 78 decision should not be given preclusive effect.

The Court agrees, however, that claims related to Plaintiff's first hearing were rendered moot by the rehearing and recommends that the Motion for Summary Judgment be granted on that basis.

While the parties clearly dispute whether Plaintiff's rights were violated during the disciplinary proceedings at issue, there is no dispute of material fact as to the chain of events relevant to the disciplinary process that took place. Plaintiff was initially issued the misbehavior report at issue on January 14, 2016. Defs.' Rule 56.1 St. at ¶ 3; Pl.'s Rule 56.1 St. at ¶ 3. He was placed in the SHU at Great Meadow that same day. Defs.' Rule 56.1 St. at ¶ 4; Pl.'s Rule 56.1 St. at ¶ 4. A disciplinary hearing was then held by Defendant Corbett who ultimately found Plaintiff guilty of all charges. Defs.' Rule 56.1 St. at ¶¶ 5 & 8; Pl.'s Rule 56.1 St. at ¶¶ 5 & 8. In March 2016, Plaintiff was transferred from Great Meadow to Upstate. Defs.' Rule 56.1 St. at ¶ 11; Pl.'s Rule 56.1 St. at ¶ 11. Plaintiff appealed Defendant Corbett's determination and Defendant

Rodriguez reversed and ordered a new hearing. Defs.' Rule 56.1 St. at ¶ 10; Pl.'s Rule 56.1 St. at ¶ 10.

The rehearing was conducted at Upstate Correctional Facility by Commissioner's Hearing Officer Liberty, who is not a party. Defs.' Rule 56.1 St. at ¶ 12; Pl.'s Rule 56.1 St. at ¶ 12. Corrections Officer T. Parent, who is also not a party to this action, was assigned as Plaintiff's assistant for purposes of that hearing. Knapp Decl., Ex. E at p. 5. CHO Liberty found Plaintiff guilty of the charges and that determination was affirmed by Defendant Rodriguez. Knapp Decl. at Ex. E.

"Although Plaintiff asserts that Defendants violated his rights at the First Hearing, that hearing became null as a result of the Second Hearing." *Ramos v. Chappius*, 2018 WL 488950, at *2 (W.D.N.Y. Jan. 19, 2018). *Ramos* reached that conclusion in reliance on the Second Circuit's decision in *Horne v. Coughlin* which noted "[w]e need not discuss Horne's contention that his rights were violated at the first hearing, because it became a nullity" following a rehearing. 155 F.3d 26, 31 (2d Cir. 1998). Courts in this circuit routinely find claims related exclusively to an initial disciplinary hearing moot when, as here, that finding was reversed and a new hearing was held. *See, e.g., Vance v. Dep't of Corr. & Cmty. Supervision*, 2021 WL 5095309, at *9 (N.D.N.Y. Aug. 12, 2021), *report and recommendation adopted sub nom. Vance v. Venettozzi*, 2021 WL 4145705 (N.D.N.Y. Sept. 13, 2021); *Fowler v. New York State Dep't of Corr. & Cmty. Supervision*, 2020 WL 1905233, at *2-3 (W.D.N.Y. Apr. 17,

2020); *Williams v. Korines*, 2018 WL 5729353, at *11-12 (N.D.N.Y. Aug. 31, 2018), *report and recommendation adopted*, 2018 WL 4521204 (N.D.N.Y. Sept. 21, 2018).

Plaintiff was initially sentenced to a 365-day term in SHU by Defendant Corbett on February 16, 2016. Defs.' Rule 56.1 St. at ¶ 9; Pl.'s Rule 56.1 St. at ¶ 9. The rehearing was completed on May 3, 2016 and Plaintiff, upon the guilty determination, was sentenced to 270 days in SHU. Knapp Decl., Ex. E at p. 1. That penalty was later lowered to 152 days by Defendant Rodriguez. *Id.* at p. 8. Therefore, it is clear that any time served as a result of the initial hearing was credited toward the penalty imposed following the second hearing such that there is no due process violation attributable to the first hearing. *Vance v. Dep't of Corr. & Cmty. Supervision*, 2021 WL 5095309, at *9; *Cuello v. Lepkowski*, 2019 WL 315258, at *5 (W.D.N.Y. Jan. 24, 2019) (citing cases); *Williams v. Korines*, 2018 WL 5729353, at *11.

Accordingly, the Court recommends that Defendants be granted summary judgment on Plaintiff's due process claim.[6]

---

[6] An additional ground for summary judgment exists as to Defendant Rodriguez. Plaintiff's claim as to him is that he "failed to remedy" the alleged constitutional violation at the first hearing because he merely reversed that determination, but permitted a new hearing, rather than directing the dismissal of the misbehavior report. Am. Compl. at ¶ 119. "Plaintiff's attempt to distinguish an outright reversal from a reversal for rehearing cannot succeed." *Randolph v. Prieur*, 2020 WL 5822156, at *4 (N.D.N.Y. July 31, 2020), *report and recommendation adopted sub nom. Randolph v. Preiuer*, 2020 WL 5821610 (N.D.N.Y. Sept. 30, 2020). Plaintiff appealed his initial disciplinary determination and obtained a reversal of that determination. "The remedy for a procedural due process violation is due process." *Id.* Plaintiff's allegation, therefore, clearly does not state a claim as to Rodriguez.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 60) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: January 7, 2022
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge